Dear Delegate Vallario:
You have requested our opinion on two questions about the rulemaking authority of Maryland Court of Appeals, as applied to the discipline of attorneys:
1. May the Court of Appeals by rule, and without legislative authority, allow for the issuance of subpoenas by Bar Counsel and the Chair of the Inquiry Panel?
2. May the Court of Appeals by rule, and without legislative authority, grant absolute immunity to the members of the Attorney Grievance Commission, the Inquiry Committee, the Review Board, Bar Counsel, and their employees and designees?
Our opinion is that the Court of Appeals may do so.
 I Background
Your inquiry stems from two aspects of a proposed revision of the Attorney Discipline Rules: subpoena authority and immunity. Regarding subpoenas, current Maryland Rule BV4 and proposed Rule 16-712 provide that, during a preliminary investigation and upon application by the Bar Counsel, the Chair of the Attorney Grievance Commission may authorize Bar Counsel to issue a subpoena to compel the attendance of witnesses and the production of designated documents or other tangible things. Current Rule BV6 d (3)(c) provides that in a proceeding before the Inquiry Panel, the Panel, the Bar Counsel, or the attorney who is the subject of the complaint may cause the issuance of a subpoena by a court clerk under Rule 2-510. Proposed Rule 16-718 provides that either the Bar Counsel or the attorney may request the Panel Chair to cause a subpoena to be issued by a clerk of a circuit court pursuant to Rule 2-510; the subpoena would compel the attendance of witnesses and the production of documents for Inquiry Panel proceedings.
Regarding immunity, the current rules are silent. The proposed rules grant immunity to those persons involved with the disciplinary process. Proposed Rule 16-743 provides that members of the Attorney Grievance Commission, the Inquiry Committee, the Review Board, Bar Counsel, and their employees and designees (including monitors, auditors, and conservators) are immune from suit and civil liability for conduct or communications in the course of their official duties.
 II Authority of the Court of Appeals
A. Rulemaking Authority Generally
Under the Constitution, the Court of Appeals has express rulemaking power. Article IV, § 18(a) provides as follows:
 The Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law. The power of courts other than the Court of Appeals to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Court of Appeals or otherwise by law.
"The basis for the grant of rule-making power is the recognition that in order to provide for the orderly administration of justice, reasonable and specific rules of procedure are necessary." Kohr v. State, 40 Md. App. 92, 96, 388 A.2d 1242
(1978). The Court's rules are legislative in nature and have the force of law. Id. See also Hill v. State, 218 Md. 120, 127,145 A.2d 445 (1958); 65 Opinions of the Attorney General 285, 299 (1980). See generally 66 Opinions of the Attorney General
80 (1981).[1]
B. Disciplinary Authority
The judicial power to provide for the orderly administration of justice has been understood to include the power to discipline attorneys. See Attorney General v. Waldron, 289 Md. 683,426 A.2d 929 (1981). The Court of Appeals has said that certain regulatory responsibilities over lawyers are essentially judicial in nature: regulation of the practice of law, the admission of new members to the bar, and the discipline of attorneys who fail to conform to the standards governing their professional conduct. Accordingly, these regulatory responsibilities are encompassed in the constitutional grant of judicial authority. 289 Md. at 692.[2]
Discussing the rationale for its regulatory authority, the Court of Appeals opined:
 The statements of this and other courts announcing the obligation of the judicial branch of government to monitor and manage its own house are not hollow proclamations of power, for the placement of this responsibility with the judiciary represents a recognition of the special, and to a degree, unique relationship that has evolved over the years between the legal profession and the tribunals of justice it serves. In this country it is a well known maxim that attorneys function as officers of the courts, and, as such, are a necessary and important adjunct to the administration of justice. . . . A court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute.
289 Md. at 695, 697. Statutory provisions addressing admission to the bar and infractions by lawyers, now codified in Title 10 of the Business Occupations and Professions Article, supplement rather than supplant the Court's authority. Lukas v. Bar Ass'n,35 Md. App. 442, 371 A.2d 669, cert. denied, 280 Md. 783 (1977).
The Court of Appeals, in exercising its authority to regulate the practice of law and the discipline of attorneys, has the power to conduct a general investigation into the conduct and practices of attorneys whenever it has cause to believe that professional misconduct might have occurred. See 7 Am. Jur. 2d Attorneys atLaw § 30. See also Attorney Grievance Comm'n v. Harris,310 Md. 197, 202, 528 A.2d 895 (1987), cert. denied, 484 U.S. 1062 (1988) (proceedings conducted by Inquiry Panel and Review Board are investigatory in nature and designed to aid in determining whether disciplinary action is warranted). The aim of the inquiry is to collect information that will enable the Court to take whatever action it considers expedient for the public welfare. SeeAttorney Grievance Comm'n v. Hamby, 322 Md. 606, 611, 589 A.2d 53
(1991) (the purpose of disciplinary proceedings against an attorney is to protect the public).
Pursuant to its inherent authority to regulate the practice of law and its express constitutional authority to regulate "practice . . . in the . . . courts . . .," the Court of Appeals by rule established the Attorney Grievance Commission. The Commission is the prosecutorial arm of the Court, given the responsibility to supervise and administer the discipline of attorneys licensed to practice in this State. See AttorneyGrievance Comm'n v. McBurney, 282 Md. 116, 122, 383 A.2d 58
(1978). The Commission, therefore, acts as the means by which the Court of Appeals controls the practice of law in Maryland.
The Commission comprises attorneys and public representatives, charged with the responsibility of administering and enforcing the standards of professional conduct adopted by the Court of Appeals for the discipline of the bar. Md. Rule BV2. The Commission has the power to recommend to the Court procedural and administrative rules relating to the disciplinary system affecting attorneys; appoint and supervise Bar Counsel; authorize the Bar Counsel to employ attorneys, investigators, and clerical personnel; and appoint members of the Inquiry Committee and the Review Board. Md. Rule BV3 b.
C. Disciplinary Procedures
All complaints are initially investigated by the Bar Counsel. Rule BV6 a (1). If the Bar Counsel finds the complaint to be without merit or the attorney has engaged in conduct that does not warrant discipline, Bar Counsel may dismiss the complaint subject to approval by the chairman or vice chairman of the Inquiry Committee. If Bar Counsel concludes that the attorney is guilty of misconduct for which a reprimand should be administered, if an inquiry panel proceeding has been dispensed with, and if there is approval by the chairman or vice chairman of the Inquiry Committee, Bar Counsel may administer a reprimand. Rule BV6 a (3).
Unless a complaint is dismissed or an Inquiry Panel proceeding has been dispensed with, the Bar Counsel is to refer the complaint to the Inquiry Panel and give notice to the attorney of the nature of the complaint made. Rule BV6 a (4). The Inquiry Panel may dismiss the complaint without a hearing. Otherwise, the Panel conducts a hearing and can recommend that the complaint be dismissed, the attorney be reprimanded, or formal charges be filed. Rule BV6 e (4)(a). If the panel decides that a reprimand or formal charges are warranted, it states the basis in writing and files its recommendation with the Bar Counsel. If the recommendation is not unanimous, the dissenting members file a minority report. If the Inquiry Panel votes unanimously to dismiss the complaint, it must submit written reasons with the Bar Counsel and the case is dismissed. Rule BV6 e (4)(c). A less than unanimous vote for dismissal requires consideration by the Review Board upon submission of the majority and minority reports. Rule BV6 e (4)(d). The Review Board may approve, reject, or modify the recommendation; remand for further proceedings; or dismiss the complaint. Rule BV7 b. If the Review Board issues a reprimand, the attorney may request that formal charges be filed. Rule BV7 c. In response to that request, the Board must either instruct the Bar Counsel to file charges or withdraw the reprimand and dismiss the complaint. Id. Charges against an attorney are filed on behalf of the Commission in the Court of Appeals. Rule BV9 b.
 III Subpoena Authority
Regulatory and enforcement authority generally carries with it all of the modes of inquiry and investigation traditionally employed or useful to execute the authority granted. Dow ChemicalCo. v. United States, 476 U.S. 227, 233 (1986). Traditional investigatory methods include gathering and compiling information by means of subpoenas for witnesses and records. See
2 Am. Jur. 2d Administrative Law § 128 (1994). For this reason, boards with disciplinary authority over licensed professionals commonly have been granted subpoena authority by statute. See, e.g., § 14-401(g) of the Health Occupations ("HO") Article (Board of Physician Quality Assurance); HO § 4-318(g) (Board of Dental Examiners); § 2-317(d) of the Business Occupations and Professions Article (Board of Public Accountancy). In our view, the Court has comparable authority and discretion under the Constitution to fashion the tools needed to discharge its judicial duties, including investigating and disciplining attorneys.[3]
Article IV, § 1 of the Maryland Constitution has been interpreted as prohibiting the delegation of a purely judicial function or power. See County Council of Montgomery County v.Investors Funding Corp., 270 Md. 403, 428, 312 A.2d 225 (1973);Ocean City Bd. of Supervisors of Elections v. Gisriel,102 Md. App. 136, 148, 648 A.2d 1091 (1994). It is well-settled, however, that a court does not delegate its powers, duties, or functions when it delegates to an agency of the court system various responsibilities related to the admission and discipline of attorneys. See Idaho Bar Ass'n v. Idaho Public Utilities Comm'n,637 P.2d 1168, 1171 (Idaho 1981); In re Roth, 75 N.E.2d 278, 279
(Ill. 1947); In re Donaghy, 66 N.E.2d 856, 857 (Ill. 1946). Seegenerally 16 C.J.S. Constitutional Law § 175 (1984). While the Commission's investigatory power is broad, it is not without limit. The information sought by a subpoena must be "relevant to the inquiry, and the demand [must] not [be] too indefinite or overbroad." Unnamed Attorney v. Attorney Grievance Comm'n,313 Md. 357, 365, 545 A.2d 685 (1988) (quoting Banach v. State Comm'n onHuman Relations, 277 Md. 502, 506, 356 A.2d 242 (1976)).[4]
All of the Commission's activities remain subject to the Court's ultimate authority and control.
 III Immunity
Maryland has long recognized that statements made by counsel and by parties in the course of "judicial proceedings" are privileged so long as such statements are material and pertinent to the questions involved, irrespective of the motive with which they are made. Caldor, Inc. v. Bowden, 330 Md. 632, 648,625 A.2d 959 (1993). See generally Annotation, Testimony Before orCommunication to Private Professional Judicial Commission, EthicsCommittee or the Like, As Privileged, 9 A.L.R. 4th 807 (1981). This absolute immunity extends to the judge as well as to the witnesses and parties to the litigation, for statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case. Id.See also Kerpelman, 23 Md. App. at 630. The rationale behind absolute immunity is to free judges and other participants in a judicial proceeding to take controversial actions without the intimidation of exposure to personal liability. Parker v. State,337 Md. 271, 281, 653 A.2d 436 (1995).
These policy considerations apply fully to attorney disciplinary proceedings. A proceeding before the Commission has been characterized as a "judicial proceeding." Braverman v. BarAssociation of Baltimore, 209 Md. 328, 336, 121 A.2d 473, cert.denied, 352 U.S. 830 (1956) (the action of a court in exercising its power to disbar or suspend an attorney is judicial in character). See also Attorney General v. Waldron, 289 Md. at 692
(discipline of attorneys is essentially judicial in nature);Kerpelman v. Bricker, 23 Md. App. 628, 630, 329 A.2d 423 (1974) (a proceeding before the Attorney Grievance Commission is a judicial proceeding). Therefore, absolute immunity may be asserted now, without any express rule. Surely the Court of Appeals may codify this application of absolute immunity in Rule 16-743.
Similarly, the Court may include in the rule another well-established basis for absolute immunity: prosecutorial immunity. In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court concluded that the grant of absolute immunity traditionally afforded criminal prosecutors under the common law derives from a need to protect the exercise of independent judgment. The Court observed that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983." 424 U.S. at 424. The public policy considerations included the fact that a prosecutor is "duty bound" to exercise the best possible judgment in deciding which suits to bring and in prosecuting them in court. "The public trust of the prosecutor's office would suffer if he was constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Id. The Supreme Court concluded that "[u]ltimate fairness of the operation of the system would be weakened by subjecting prosecutors to § 1983 liability."424 U.S. at 427. Further, in Butz v. Economou, 438 U.S. 478 (1978), the Court extended absolute immunity to Department of Agriculture officials who initiated administrative enforcement proceedings.
Bar Counsel's responsibility for bringing disciplinary proceedings and exercising independent judgment in determining when to bring such proceedings is not very different from the responsibility of a criminal or administrative prosecutor. Bar Counsel's independence, like that of a prosecutor, would be compromised were Bar Counsel to fear that a mistake could result in a civil suit. Bar Counsel must be able to perform the task of protecting the public by determining an attorney's fitness to practice law without the worry of intimidation and harassment from a dissatisfied attorney. Further, the welfare of the legal system would be jeopardized if Bar Counsel had to weigh each decision in terms of potential personal liability. The Court may reflect these policy judgments in a rule.
Finally, the Court of Appeals could reasonably conclude that the policy considerations underlying absolute immunity for prosecutorial activities likewise require immunity for investigatory activities prior to a prosecution. See Jarvis v.Drake, 830 P.2d 23, 27 (Kan. 1992). The investigation, evaluation, presentation and determination of facts are inherent and essential parts of the judicial process. Adams v. Peck, 288 Md. 2, 5,415 A.2d 292 (1980). "If this process is to function effectively, those who participate must be able to do so without being hampered by the fear of private suits . . . ." Id. The Court could reasonably fear that members of the Commission, the Inquiry Committee, the Review Board, and Bar Counsel and its employees and designees might be unduly inhibited in the performance of their duties by the threat of liability for tortious conduct. See Tucker v.Woolerly, 99 Md. App. 295, 300, 637 A.2d 482, cert. dismissed,336 Md. 280 (1994).[5] In turn, apprehension of potential personal liability for investigating complaints might undermine the system established for ensuring that persons holding licenses to practice law in Maryland are worthy to continue to practice law. See Attorney Grievance Comm'n v. Howard, 282 Md. 515, 524,385 A.2d 1191 (1978). See also Lepley v. Dresser,681 F. Supp. 418, 423 (W.D. Mich. 1988) (because the activities performed by members of staff of Attorney Grievance Commission were functionally equivalent to those which would be performed by the Michigan Supreme Court in the absence of delegation, the members of the staff were absolutely immune from liability for their activities in investigating and prosecuting complaints before the Grievance Commission).
Because the Court of Appeals has the inherent power to discipline attorneys, it would be lawful for the Court, through its rulemaking power, to grant what it deems to be sufficient immunity to those persons who assist the Court in carrying out its role to discipline attorneys.[6]
 IV Conclusion
In summary, it is our opinion that:
1. The Court of Appeals by rule may allow for the issuance of subpoenas by Bar Counsel and the Chair of the Inquiry Panel.
2. The Court of Appeals by rule may grant absolute immunity by rule to the members of the Attorney Grievance Commission, the Inquiry Committee, the Review Board, Bar Counsel and their employees and designees.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Kimberly Smith Ward Assistant Attorney General
_____________________ Jack Schwartz Chief Counsel Opinions and Advice
[1] The rulemaking power, like all legislative power, must be exercised within the confines of the federal and State constitutions. Kohr, 40 Md. App. at 96.
[2] See also Ratterman v. Stapleton, 371 S.W.2d 939, 940
(Ky.Ct.App. 1963) (any court authorized to admit an attorney has inherent jurisdiction to disbar for sufficient cause, and this jurisdiction does not necessarily depend on express constitutional provision or statutory enactment); Board of Overseers of the Barv. Lee, 422 A.2d 998, 1002 (Me. 1980) (power to define and regulate practice of law naturally and logically belongs to judicial department, and admission and disbarment is ultimate exercise of that power); In re Fox, 296 So.2d 701, 703 (Miss. 1974) (the power to disbar is not dependent upon any statute, and is exercisable in the absence of any statute whatsoever); Sadlerv. Oregon State Bar, 550 P.2d 1218, 1223 (Or. 1976) (judiciary has the inherent power to regulate and control the practice of law).See generally 7 Am. Jur. 2d Attorneys at Law § 29 (1980) (a court having the power to admit an attorney to practice has the inherent power to control the conduct of its own affairs and to maintain its own dignity by addressing allegations of attorney misconduct).
[3] Cases from other jurisdictions support the view that an arm of the court having regulatory authority over the practice of law has subpoena authority if a court rule so provides, but not otherwise. See In Re Wayne County Citizens Grand Jury,299 N.W.2d 25, 27 (Mich.Ct.App. 1980). Cf. Wong v. Schorr, 466 P.2d 441,443 (Hawaii 1970) (bar ethics committee lacks subpoena power);Mississippi Ethics Comm'n v. Committee on ProfessionalResponsibility of the Mississippi Bar, 672 So.2d 1222, 1224 (Miss. 1996) (Committee on Professional Responsibility does not have independent subpoena authority).
[4] Although the Court of Appeals has declined to equate disciplinary proceeding involving members of the legal profession with proceedings before an administrative agency, the Court has said that it is "guided by the requirement of reasonableness which circumscribes an administrative agency's investigatory powers" in defining the appropriate boundaries of the Commission's subpoena power. Unnamed Attorney v. Attorney Grievance Comm'n, 313 Md. 357,365, 545 A.2d 685 (1988). An administrative agency may delegate its investigative power, including subpoena power, if no restriction is placed on the delegation of such authority. Donovanv. Nat'l Bank of Alaska, 696 F.2d 678, 682 (9th Cir. 1983). Seealso United States v. Giordano, 416 U.S. 505 (1974).
[5] Common law absolute immunity does not extend to every activity of a prosecutor. Where the activities of a prosecutor are investigative, the prosecutor does not acquire the benefit of absolute immunity. Burns v. Reed, 500 U.S. 478 (1991). See alsoKulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992) ("[m]erely investigative evidence gathering is not absolutely protected"). If this framework for prosecutorial immunity were applied to disciplinary matters, Bar Counsel would only be entitled to qualified immunity under the common law. Bar Counsel and other Commission personnel would also enjoy the qualified immunity provided by the Maryland Tort Claims Act. See § 12-105 of the State Government Article and § 5-399.2(b) of the Courts and Judicial Proceedings Article.
[6] Other jurisdictions have adopted similar rules granting immunity to persons involved in attorney disciplinary proceedings.See, e.g., Ala. Disc. Rule 15 (absolute immunity for commission members and staff); I. St. Ct. Rule 118.19 (members of grievance commission, members of Board of Profession Ethics and Conduct and their respective staff are immune from suit for any conduct in the course of their official duties); Kan. S. Ct. Rule 223 (participants in disciplinary proceeding entitled to judicial immunity); Mich. Rule Disc. P. 9.125 (the administrator, legal counsel, investigators, members of hearing panels, the commission, the board and their staff are absolutely immune for suit arising out of their performance of their duties); P. Disc. Rule 209 (a) (members of the Board or Disciplinary Counsel and staff are absolutely immune from civil suit); S.C. App. Rule 413 (members of Board or Executive Committee, members of hearing panels, counsel staff and attorneys shall be immune from suit for any conduct in the course of their official duties); Tex St. Rules Disc. P. 15.11 (absolute immunity for members of the Commission Chief Disciplinary Counsel and his or her staff).
 *Page 34